property, Baldwin was bound to hold it, not under the orders of the plaintiffs, as in the case of an ordinary execution, but under the orders of the court, and have it forthcoming when demanded for execution. His failure to do this was a neglect of his official duty, whereby Rice acquired a right of action against him and the sureties on his official bond. The surrender of the attached property to Mitchell, by direction of Wilson and Wolf and the defendants, was of course a protection to Baldwin against them. Rice is entitled to such damages as will indemnify him for Baldwin's neglect of official duty.

Whether Rice is entitled to recover nominal damages only, or the amount of his debt, if the value of the attached property was enough to pay the debt, or an amount equal to what his *pro rata* share would have been had there been no agreement to dismiss and the property had been held for execution, need not now be decided. It is sufficient, in overruling the demurrer, to say that Rice had a right of action.

---

*Ex parte* LANE.

(*District Court, D. Michigan.* January 31, 1881.)

1. EXTRADITION—COMPLAINT AND WARRANT.

A complaint and warrant in an extradition case should show upon their face that the commissioner issuing the warrant is duly empowered to act in cases of that description.

2. SAME—HABEAS CORPUS.

*Quære,* whether the court, upon *habeas corpus,* would be bound to treat a warrant defective in this particular as null and void.

3. CANADA—JUDICIAL NOTICE.

The court may take judicial notice of the fact that the dominion of Canada is a British possession.

4. COMPLAINT—COMMON-LAW OFFENCE.

A complaint charging an offence at common law is good, notwithstanding it concludes " against the form of the statute," etc. In such case no proof of the foreign statute is required.

5. SAME—INFORMATION AND BELIEF.

A complaint made simply upon information and belief is fatally defective, and gives the commissioner no jurisdiction.

6. SAME—SAME—OFFICIAL REPRESENTATIVE.

If the person making the complaint has no personal knowledge of the facts, it should appear that he is a representative of the foreign government, acting in an official capacity, or he should produce an indictment against the party charged, or depositions tending to show his guilt, or at least set forth with particularity the sources and details of his information, that it may appear that the arrest of the party is sought upon something more than a rumor or suspicion of his guilt.

7. SAME—AMENDMENT BY COMMISSIONER—CERTIORARI.

The commissioner has no power to amend the complaint or warrant, or to supply defects by his certificate, after the case is closed and a writ of *certiorari* is served upon him to produce the record of his proceedings.

This was a writ of *habeas corpus* and *certiorari* to review the proceedings had before Darius J. Davison, United States commissioner, with reference to the application of the Canadian authorities for the extradition of the petitioner, Oliver Lane. Under the writ of *habeas corpus* the marshal returned that he held the prisoner in custody by virtue of a *mittimus* from the commissioner to await the order of the secretary of state. To the *certiorari* the commissioner returned a record of the proceedings in the cause.

*A. E. Hawes*, for petitioner.

*J. W. Finney*, Asst. U. S. Dist. Att'y, for prosecution.

BROWN, D. J. Several objections were taken to the regularity of the proceedings before the commissioner, which I proceed to consider in their order.

1. That the complaint nowhere recites the appointment of the commissioner, nor that he is empowered under the laws of the United States to entertain complaints or issue warrants in extradition cases. The complaint purports to be made by Alexander B. Baxter, of Chatham, in the province of Ontario, "who, being duly sworn, saith, that on his best knowledge, information, and belief," etc.; and purports to be sworn to before D. J. Davison, United States extradition commissioner for the eastern district of Michigan

The commissioner, however, certifies that the word "extradition" was interlined after the conclusion of the testimony, and without the knowledge or consent of the petitioner. I doubt the power of the commissioner to make this amendment at the close of the proceedings, and after his attention had been called to the defect. If this can be rightfully done, then almost any defect in the proceedings might be amended after the attention of the commissioner had been called to it. For the purpose of this case, therefore, I will treat the complaint as it stood before the amendment was made. I think that in a complaint before a commissioner, and in the subsequent proceedings before him, he ought to be described as a commissioner of the circuit court of the United States, specially authorized by said court to take cognizance of applications for extradition, or by words of similar import, since he is not authorized by virtue of his general appointment as commissioner of the circuit court to assume jurisdiction of this class of cases. Rev. St. § 5270.

In the case of Re Farez, 7 Blatchf. 345, objection was taken to the proceedings on the ground that the warrant did not show that the commissioner was appointed by the court to issue the particular warrant, but it did appear upon the face of the warrant that he was appointed to issue warrants in all cases of extradition falling within the acts in question, and it was held sufficient. It had been previously held, however, in a case against the same party, that a warrant which did not show upon its face that the commissioner issuing it was authorized to act in extradition cases was void. Re Farez, 7 Blatchf. 34; see, also, In Re Macdonnell, 11 Blatchf. 86.

In the case of the United States v. Stowell, 2 Curtis, 153, an indictment for obstructing the marshal in the service of warrant for the rendition of Anthony Burns was quashed, upon the ground that the warrant set forth simply that it was issued by a commissioner of the circuit court, without averring that he was such a commissioner, as was particularly described in the act of September, 1850; and it was further held that such defect could not be aided by referring

to the records of the court showing that the commissioner was authorized to issue the warrant. Hence, I think it should appear that the person taking the complaint and issuing the warrant is not only a commissioner of the court, but is one authorized to act in extradition cases. I should be loth, however, to hold that the proceedings were void upon this account, since I am by no means certain but that the court, upon an application for discharge upon a writ of *habeas corpus,* would be bound to take judicial notice of the fact that the commissioner had been appointed for this purpose. If a third person had been indicted for resisting a marshal in the execution of this warrant, I should have no doubt that the decision of Justice Curtis would apply, and that it would be necessary to make a more particular averment in the indictment.

Without expressing a more decided opinion upon the effect of the omission in this case, I proceed to the consideration of the next objection.

2. That although the complaint charges that said Lane committed the crime of forgery, and of uttering forged paper, at Rondeau, in the province of Ontario, there is nowhere in the proceedings any averment or proof that the province of Ontario is within the territorial domain of Great Britain. There is nothing in this objection. Undoubtedly, it should be averred and proved that the town within which the offence is charged to have been committed is within the province of Ontario; but I think the court may take judicial notice of the fact that this province is a British possession. There has been a good deal of discussion in the books as to what facts may be within the judical cognizance, but I think a court may safely take notice of such facts as are within the knowledge of every intelligent person in the community. There is scarcely a school-boy in the state who does not know that the great dominion that lies upon the other side of the Detroit river is a part of her majesty's possessions, and it is asking too much of a judge to shut his eyes to this fact. *Peyroux* v. *Howard,* 7 Pet. 324, 342; *The Apollon,* 9 Wheat. 374.

3. Objection is also taken upon the ground that the offence is charged to have been committed "against the statute in such case made and provided," and that there is no proof of any statute in the province of Ontario punishing the crime of forgery. It seems to have been formerly the law that where an offence was punishable at common law only, and yet the indictment averred it to have been done against the form of the statute, it should be quashed. Later authorities, however, hold that this is mere surplusage, if the offence be in fact a common-law crime. 1 Bishop on Criminal Proceedings, § 349. Whether a party could be extradited for a forgery under a special act of the province of Ontario, which was not a forgery at common law, it is unnecessary here to determine. I have no doubt, however, that where the offence committed is a forgery at common law, the foreign government has a right to take proceedings for extradition. It may be safely assumed that there is a provincial statute punishing the common-law crime of forgery. If, however, the party were shown not to be guilty of a common-law forgery, it would be incumbent upon the prosecution to show a statute covering the offence.

4. The complaint is made upon information and belief, and in this respect I think it is fatally defective. The statute requires a complaint upon oath, and I think it is not satisfied by a simple allegation that the complainant is informed and believes the petitioner to have committed the offence, or, in the language of this complaint, that upon the "best knowledge, information, and belief" of complainant, defendant is guilty. A person may swear that he has reason to believe, and does believe, that a person has committed a crime, although his reasons may amount to little more than mere suspicion, without laying himself open to a charge of perjury. This, however, is not a complaint upon oath, within the meaning of the statute. The personal liberty of a citizen ought not to be interfered with upon an allegation so loosely framed. It is very singular that there are so few cases in which the requirements of a proper complaint upon oath are

discussed, but I think, as a general rule, a mere allegation that the complainant has reason to believe, and does believe, is insufficient. Such was the ruling in *Ex parte Smith*, 3 McLean, 135, and such, I think, is the inference to be drawn from the language of the court in *Washburn* v. *People*, 10 Mich. 372, in which a distinction is drawn between complaints, and jurats of a prosecuting attorney attached to informations made after preliminary examinations before a magistrate.

This is certainly the rule in analogous cases. Thus, affidavits upon information and belief alone are insufficient to authorize the arrest of a fraudulent or absconding debtor. *Smith* v. *Luce*, 10 Wend. 257; *Matter of Bliss*, 7 Hill, 187; *Proctor* v. *Prout*, 17 Mich. 473.

In cases of injunctions, the rule is that the material facts must be sworn to positively, and by a person having knowledge of such facts. *Waddell* v. *Bruen*, 4 Edwards, Ch. 671; *Armstrong* v. *Sandford*, 4 Minn. 49.

So, also, with regard to depositions attached to a petition for an adjudication of bankruptcy, it has usually been held that such depositions, as to the acts of bankruptcy, must be such as to constitute legal testimony; that the statements must be of facts, and not the mere conclusions of witnesses; and that, as a general rule, they must be of the witnesses' own knowledge, and be stated with such clearness as to leave no doubt as to their meaning. *In re Rosenfield*, 11 Bank. Reg. 86; *In re Hadley*, 12 Bank. Reg. 366, 374.

I would not undertake to say, however, that a complaint for extradition may not be made upon information and belief, for such a ruling might put it out of the power of a foreign government to obtain the surrender of a criminal in a large number of cases, without incurring a very great and unnecessary expense in so doing. For instance, in the case of *Farez*, 7 Blatchf. 345, the complaint was made by a representative of a foreign government, in his official capacity as Swiss consul. I have no doubt that if depositions have been taken in a foreign country tending to show the accused guilty of the crime, or if an indictment has been found against him,

or if the representative of the foreign government demanding his extradition has fully informed himself with regard to the particular events by conversations with persons who witnessed them, he may make a complaint upon information and belief; but, in such case, I think he should set forth with some particularity the sources and details of his information, or the grounds for supposing the defendant to be guilty; in other words, it should appear that his reasons for pursuing the defendant are based upon something more than mere rumor or suspicion of his guilt.

In the case under consideration, however, the complaint does not purport to have been made by an officer, nor does it give any reason why it is made simply upon his best knowledge, information, and belief. It is true that after the writ of *certiorari* was issued and served upon the commissioner he added a further certificate to his return, setting forth that the complainant was in fact superintendent of police, and that he exhibited to the commissioner, at the time of issuing the warrant, a complaint on oath, purporting to have been made in writing before a police magistrate, charging Lane with forgery and the utterance of forged paper, as set forth in the complaint, and the warrant issued thereon; and that he was also attended by a person who claimed to be crown attorney of the county within which the offence was committed. I do not feel at liberty, however, to take notice of a certificate thus made, after the service of the writ.

In my opinion, the complaint did not give the commissioner jurisdiction to act in this matter, and the prisoner is entitled to a discharge.