## Ex parte YORDI.

(District Court, W. D. Texas, Austin Division. February 5, 1909.)

EXTRADITION (§ 11*)—INTERNATIONAL—COMPLAINT—INFORMATION AND BELIEF.
Where the consul of the republic of Mexico when making a complaint charging petitioner, who was a fugitive from justice of that republic, with the offense of forgery on information and belief, had before him the record from Mexico and the depositions of witnesses therein contained, which were amply sufficient to show the commission of an offense, and such record and depositions were before the commissioner at the time he issued the warrant based on such complaint, the proceedings were not invalidated because the record and depositions were not attached to the complaint or referred to therein as the sources from which the consul obtained his information, and on which he grounded his belief.

[Ed. Note.—For other cases, see Extradition, Cent. Dig. § 12; Dec. Dig. § 11.*]

## On Habeas Corpus.

The petitioner, Pablo Yordi, alleging that he is unlawfully detained in custody by the United States marshal, has applied to the court for a writ of habeas corpus to secure his release. It is disclosed by the record that the petitioner is charged in the republic of Mexico with the crime of "fraud and forgery of documents," and that a warrant for his arrest was duly issued by the jefe politico of the city of Guadalajara. Yordi avoided arrest in Mexico, and fled to El Paso, Tex., where he is now detained in prison, awaiting, under an order of the United States commissioner, the issuance by the proper authorities of an order for his extradition. Upon presenting the petition for the writ of habeas corpus, counsel representing the petitioner, the republic of Mexico, and the United States were present. The order of the court upon the petition was as follows: "It is therefore ordered by the court that said application for writ of habeas corpus be allowed for hearing and further consideration by this court, and the United States marshal for the Western district of Texas is directed to bring and produce before the court at Austin, Tex., on January 29, A. D. 1909, the body of petitioner."

In order to abbreviate the proceeding as much as possible, and to save costs and expenses, the following written stipulation was entered into between counsel for the respective parties:

"United States v. Pablo Yordi, alias Ernesto R. Almada Urquijo.

"Held for Extradition by W. D. Howe, U. S. Commissioner.

"It is hereby stipulated and agreed by and between the petitioner, represented by his attorneys of record, and the United States attorney for the Western district of Texas, representing the United States of America, and the attorneys representing the United States of Mexico, that the United States marshal for the Western district of Texas holds in custody the said petitioner to await the action of the proper authorities of the United States of America under an order of extradition issued by W. D. Howe, United States commissioner for the Western district of Texas at El Paso, with authority in extradition cases, and by a mittimus issued to the said United States marshal commanding him to receive and keep the said defendant in his custody until further extradited to the United States of Mexico by the proper authorities of the United States of America, or until discharged by due course of law;

"And it is further stipulated and agreed by and between the parties represented by their attorneys of record as aforesaid in said cause that the production by the United States marshal of the body of the petitioner on January 29, A. D. 1909, before the District Court of the United States now in session at Austin, Texas, be and is hereby waived, and it is further stipulated and agreed by and between all the parties in this case represented by their

attorneys of record that the said marshal now holds the said petitioner in custody under the order of the said United States Commissioner W. D. Howe and the mittimus issued thereunder by the said United States commissioner as aforesaid, and hereby waive a formal return being made by the said United States marshal in obedience to said writ of habeas corpus and it is further hereby stipulated and agreed that the mittimus, complaint, warrant, motion to quash the complaint, and judgment of United States commissioner as set out in the petition for writ of habeas corpus are true and correct copies of the originals. And it is further agreed that the petitioner makes no point as to the sufficiency of the evidence; that being a matter we are satisfied cannot come before the court. It is further agreed by the petitioner that the crimes stated in the complaint are extraditable offenses under the existing treaty between the United States and Mexico if the complaint is sufficient to give the court jurisdiction.

"It is further stipulated and agreed by and between the prosecution and defense that at the time of the hearing before United States Commissioner W. D. Howe it was agreed that the complaint in this case was made by A. V. Lomeli, Mexican consul, solely upon information and belief, and that he had no actual or personal knowledge of the commission of any offense. This applies to each and every count of the complaint, and that his intention was to make them all upon information and belief. It is further, however, agreed that at the time of making the complaint the said A. V. Lomeli, Mexican consul, had before him the record and depositions of the witnesses of the Republic of Mexico, properly certified to, as subsequently introduced, which said record and depositions are hereto attached, marked 'Exhibit A,' and made a part of this agreement.

*   *   *   *   *   *   *   *   *   *   *

"It is further agreed by counsel as follows: There were three complaints made against the petitioner. The first was made by the assistant United States attorney, which is immaterial. The second was made by the Mexican consul, A. V. Lomeli, Esq., and the third was made by the Mexican consul, Mr. Lomeli. Upon the hearing under the first complaint made by Mr. Lomeli, a copy of which is hereto attached marked 'Exhibit B' and made a part hereof, the record and evidence contained in Exhibit A were before Commissioner Howe, and the same record and evidence were before Commissioner Howe at the hearing upon the second complaint, the one now under consideration."

Upon an inspection of the foregoing stipulation it will be noted that three complaints were made against Yordi, as follows: The first was made by the assistant United States attorney, and the second and third by Mr. A. V. Lomeli, consul of the republic of Mexico, residing at El Paso. The first was dismissed, and, upon the present hearing, may be disregarded as being altogether immaterial. A hearing was had before the United States commissioner upon the second, and at this hearing a voluminous record of some 40 typewritten pages, containing the orders and proceedings, including the depositions of witnesses, had before the criminal judge at Guadalajara, Mexico, was introduced in evidence. Before the conclusion of this hearing, the proceeding was dismissed upon motion of counsel for the Mexican government because the proofs introduced failed to support the allegations of the complaint. To make the matter clear the complaint charged the forgery as follows:

"That he has reasonable and credible information, which information he believes to be true and correct, and he charges that heretofore, to wit, on or about the 27th day of April, 1908, in the state of Jalisco, in the United States of Mexico, the said Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, did commit the crime of forgery, in this: That without lawful authority, and with intent to injure and defraud, the said Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, did then and there willfully and fraudulently make a certain false instrument in writing, purporting to be the act of another, to wit, purporting to be the act of J. A. Heap, manager, and Adolph Edler, cashier, of the Bank of Sonora, at Guaymas, a corporation engaged in the banking business at Guaymas, in the state of Sonora, in the United States of Mexico, which said false instrument is to the tenor as follows:

" 'No. 3902.—Guaymas, April 27th, 1908. The National Park Bank of New York. Pay to the order of Ernesto R. Almada Urquijo, Thirty Thousand no/100 dollars. $30,000.00. Bank of Sonora. Branch of at Guaymas.

" '[Signed] J. A. Heap, Manager,

" 'Adolph Edler, Cashier.'

"On the back: 'Pay to the order of the Bank of Jalisco, value received. Guadalajara, 5/26/08. [Signed] Ernesto R. Almada Urquijo.'

"Complainant charges that the said Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, did then and there commit the crime of forgery by signing to said instrument the names of J. A. Heap, manager, and Adolph Edler, cashier, of the said Bank of Sonora, for the purpose of unlawfully collecting the amount of money named therein for himself, and that he so fraudulently and unlawfully and without the consent of the said J. A. Heap, manager, and Adolph Edler, cashier, did sign their names to said instrument or bank check, as aforesaid."

The proof disclosed that the signatures of Heap, manager, and Edler, cashier, were genuine, and it is alleged that the forgery consisted in altering the check drawn by Heap and Edler for the sum of $107 by changing the check as to the number, date, and payee, and by raising the amount from $107 to $30,000. Thereupon the proceeding was dismissed, and Mr. Lomeli made a second complaint, containing several counts, by virtue of which the hearing now under consideration was had.

The following motion was made by counsel for the petitioner to quash this complaint: "Because said complaint is made by A. V. Lomeli, Mexican consul, on alleged reasonable and credible information, which information he believes to be true and correct, and said complaint does not set out the source of the information of the said A. V. Lomeli, nor the facts upon which he bases his belief or the grounds of affiant's belief; that the said charges contained in said complaint do not purport to be made on the personal knowledge of the said A. V. Lomeli." The motion was overruled, and at the hearing the record from Mexico, mentioned above and referred to in the stipulation of counsel as Exhibit A, was again introduced in evidence, and the following order was passed by the commissioner:

"First. That the complaint is insufficient in the first count for the reason that the charge therein is made on information and belief, and it is therefore ordered that, as to said count, the said defendant be, and he is hereby, discharged.

"Second. And, further, that, as to the second count, there is no evidence that the said defendant committed the crime of forgery in the Republic of Mexico as alleged, and he is therefore discharged upon said second count.

"Third. And the commissioner finds that there is probable cause to believe the defendant, Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, guilty of the offense of uttering a forged instrument in the state of Jalisco, United States of Mexico, on or about the 26th day of May, 1908, and that there is also probable cause to believe that said defendant, Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, committed the offense of obtaining money by means of false device in the state of Jalisco, United States of Mexico, on the 26th day of May, 1908, as alleged in the complaint. It is therefore the order of the commissioner that said Pablo Yordi be discharged upon the offense alleged in the first and second counts of the complaint filed herein, but that said defendant, Ernesto R. Almada Urquijo, alias Pablo Yordi or Yardi, be held for extradition to the republic of Mexico upon the charges alleged in the third and fourth counts of said complaint, and that he be committed to the county jail of El Paso county, Tex., to await the action of the proper authorities in the city of Washington upon demand for his extradition to the republic of Mexico."

The order of the commissioner sufficiently discloses the nature of the offenses charged against the petitioner, and there is no necessity for further expansion of the matter. It is proper to add that the agreement of counsel, to the effect that all counts of the complaint were made upon information and belief, was probably entered into after the entry of the order by the commissioner.

T. A. Falvey and U. S. Goen, for petitioner.
Beall & Kemp, for the Republic of Mexico.
Charles A. Boynton, U. S. Atty.

MAXEY, District Judge (after stating the facts as above). With commendable frankness counsel for the petitioner concede that there is but a single question presented by the record for decision, to wit: Was the complaint made by Mr. Lomeli, consul of the republic of Mexico, sufficient to confer jurisdiction upon the United States commissioner to hear the proceeding in extradition? See Bryant v. United States, 167 U. S. 104, 17 Sup. Ct. 744, 42 L. Ed. 94; In re Oteiza y Cortes, 136 U. S. 330, 10 Sup. Ct. 1031, 34 L. Ed. 464; Ornelas v. Ruiz, 161 U. S. 502, 16 Sup. Ct. 689, 40 L. Ed. 787; Benson v. McMahon, 127 U. S. 457, 8 Sup. Ct. 1240, 32 L. Ed. 234. It is disclosed by the stipulation of counsel that, while the complaint of the consul was verified by affidavit, it was nevertheless based, as to all of its counts, solely upon information and belief. It is, however, further shown that at the time of making the complaint the consul had before him the record from Mexico and the depositions of witnesses therein contained. This record is quite voluminous, and embodies the proceedings had before the judge at Guadalajara, Mex., beginning with the making of the complaint against the petitioner, and concluding with the issuance of a warrant for his arrest. The testimony of witnesses is fully set out in the record, and it appeared to the judge amply sufficient to justify an order for the apprehension of the accused. This record from Mexico was not only before the Mexican consul when he made the complaint against Yordi, now under consideration, but Commissioner Howe was thoroughly familiar with it, since it was introduced in evidence before him upon the hearing of the first complaint made by Mr. Lomeli. Now counsel insist that, although the consul had possession of the record and Commissioner Howe was familiar with it, still it was necessary, in order to confer jurisdiction upon the commissioner to hear the proceeding, that either the record should be attached to the complaint or that the complaint should disclose upon its face the sources of the consul's information. And in support of the contention the court was referred to the following authorities: Rice v. Ames, 180 U. S. 371, 21 Sup. Ct. 406, 45 L. Ed. 577; Ex parte Lane (D. C.) 6 Fed. 38; In re Robb (C. C.) 19 Fed. 31; United States v. Tureaud (C. C.) 20 Fed. 621; Ex parte M'Cabe (D. C.) 46 Fed. 368, 12 L. R. A. 589; Ex parte Hart, 63 Fed. 249, 11 C. C. A. 165, 28 L. R. A. 801. In Ex parte M'Cabe (D. C.) 46 Fed. 369, 12 L. R. A. 589, this court had occasion to say that:

"Authorities to show that the warrant should be supported by affidavit would seem to be superfluous. The language of the statute (Rev. St. § 5270 |U. S. Comp. St. 1901, p. 3591]) is susceptible of but a single construction; and that, by its terms, a sworn complaint is indispensable as a basis for the warrant admits of no question."

But in the present case there was a sworn complaint, and its sufficiency is the sole question presented for consideration. While In re Robb, supra, United States v. Tureaud, supra, and Ex parte Hart,

supra, sustain in some respects the position assumed by counsel, they are not so directly in point as to require extended notice.

As opposed to the authorities thus submitted, counsel, on the other side, rely upon the following: In re Farez, Fed. Cas. No. 4,645; In re Roth (D. C.) 15 Fed. 506; Ex parte Sternaman (D. C.) 77 Fed. 595; Sternaman v. Peck, 80 Fed. 883, 26 C. C. A. 214; In re Grin (C. C.) 112 Fed. 790; Grin v. Shine, 187 U. S. 183, 23 Sup. Ct. 98, 47 L. Ed. 130.

Referring to the precision required in the preparation of a complaint, Judge Coxe used the following language in Ex parte Sternaman (D. C.) 77 Fed. 596, 597:

"The complaint should set forth clearly and briefly the offense charged. It need not be drawn with the formal precision of an indictment. If it be sufficiently explicit to inform the accused person of the precise nature of the charge against him, it is sufficient. The extreme technicality with which these proceedings were formerly conducted has given place to a more liberal practice, the object being to reach a correct decision upon the main question: Is there reasonable cause to believe that a crime has been committed? The complaint may, in some instances, be upon information and belief. The exigencies may be such that the criminal may escape punishment, unless he is promptly apprehended by the representatives of the country whose law he has violated. From the very nature of the case it may often happen that such representative can have no personal knowledge of the crime. If the offense be one of the treaty crimes, and if it be stated clearly and explicitly so that the accused knows exactly what the charge is, the complaint is sufficient to authorize the commissioner to act. The foregoing propositions are, it is thought, sustained by the following authorities: In re Farez, 7 Blatchf. 345, Fed. Cas. No. 4,645; In re Roth (D. C.) 15 Fed. 506; In re Henrich, 5 Blatchf. 414, Fed. Cas. No. 6,369; Ex parte Van Hoven, 4 Dill. 415, Fed. Cas. No. 16,859; In re Breen (C. C.) 73 Fed. 458; Ex parte Lane (D. C.) 6 Fed. 34; In re Herres (C. C.) 33 Fed. 165; Castro v. De Uriarte (D. C.) 16 Fed. 93; In re Macdonnell, 11 Blatchf. 79, Fed. Cas. No. 8,771."

The principal cases relied upon by counsel are yet to be considered. And first reference will be made to Ex parte Lane, decided by Judge Brown, who subsequently as Mr. Justice Brown delivered the opinion of the court in Rice v. Ames, supra, and Grin v. Shine, supra. At pages 38, 39, and 40 of 6 Federal, the learned judge said:

"The complaint is made upon information and belief and in this respect I think it is fatally defective. The statute requires a complaint upon oath, and I think it is not satisfied by a simple allegation that the complainant is informed and believes the petitioner to have committed the offense, or, in the language of this complaint, that upon the 'best knowledge, information and belief' of complainant defendant is guilty. A person may swear that he has reason to believe, and does believe, that a person has committed a crime, although his reasons may amount to little more than mere suspicion without laying himself open to a charge of perjury. This, however, is not a complaint upon oath within the meaning of the statute. The personal liberty of a citizen ought not to be interfered with upon an allegation so loosely framed. It is very singular that there are so few cases in which the requirements of a proper complaint upon oath are discussed, but I think, as a general rule, a mere allegation that the complainant has reason to believe, and does believe, is insufficient. * * * I would not undertake to say, however, that a complaint for extradition may not be made upon information and belief, for such a ruling might put it out of the power of a foreign government to obtain the surrender of a criminal in a large number of cases without incurring a very great and unnecessary expense in so doing. For instance, in the case of Farez, 7 Blatchf. 345, Fed. Cas. No. 4,645, the complaint was made by a representative of a foreign government in his official capacity as Swiss consul. I have

no doubt that if depositions have been taken in a foreign country tending to show the accused guilty of the crime, or if an indictment has been found against him, or if the representative of the foreign government demanding his extradition has fully informed himself with regard to the particular events by conversations with persons who witnessed them, he may make a complaint upon information and belief; but in such case I think he should set forth with some particularity the sources and details of his information, or the grounds for supposing the defendant to be guilty. In other words, it should appear that his reasons for pursuing the defendant are based upon something more than mere rumor or suspicion of his guilt. In the case under consideration, however, the complaint does not purport to have been made by an officer, nor does it give any reason why it is made simply upon his best knowledge, information, and belief."

In Rice v. Ames the court held that several counts of the complaint were obviously insufficient, "since the charges were made solely upon information and belief, and no attempt was made even to set forth the sources of information or the grounds of affiant's belief." And at pages 375 and 376 of 180 U. S., and at pages 407 and 408 of 21 Sup. Ct. (45 L. Ed. 577), Mr. Justice Brown employed the following language:

"We do not wish, however, to be understood as holding that, in extradition proceedings, the complaint must be sworn to by persons having actual knowledge of the offense charged. This would defeat the whole object of the treaty, as we are bound to assume that no foreign government possesses greater power than our own to order its citizens to go to another country to institute legal proceedings. This is obviously impossible. The ordinary course is to send an officer or agent of the government for that purpose, and Rev. St. § 5271 (U. S. Comp. St. 1901, p. 3593), makes special provision that 'in every case of complaint and of a hearing upon the return of the warrant of arrest, any depositions, warrants, or other papers offered in evidence, shall be admitted and received for the purpose of such hearing if they shall be properly and legally authenticated so as to entitle them to be received as evidence of the criminality of the person so apprehended, by the tribunals of the foreign country from which the accused party shall have escaped, and copies of any such depositions, warrants, or other papers, shall, if authenticated according to the law of such foreign country, be in like manner received as evidence,' of which authentication the certificate of the diplomatic or consular officer of the United States shall be sufficient. This obviates the necessity which might otherwise exist of confronting the accused with the witnesses against him. Now, it would obviously be inconsistent to hold that depositions, which are admissible upon the hearing, should not also be admitted for the purpose of vesting jurisdiction in the commissioner to issue the warrant. Indeed, the words of the statute, 'in every case of complaint' seem to contemplate this very use of them. If the officer of the foreign government has no personal knowledge of the facts, he may with entire propriety make the complaint upon information and belief, stating the sources of his information and the grounds of his belief, and annexing to the complaint a properly certified copy of any indictment or equivalent proceeding, which may have been found in the foreign country, or a copy of the depositions of witnesses having actual knowledge of the facts, taken under the treaty and act of Congress. This will afford ample authority to the commissioner for issuing the warrant."

In Grin v. Shine, 187 U. S. 193, 23 Sup. Ct. 103 (47 L. Ed. 130) on appeal from the Northern district of California, Mr. Justice Brown, as the organ of the court, said:

"No evidence was required that the Russian consul had authority to make the complaint. All that is required by section 5270 is that a complaint shall be made under oath. It may be made by any person acting under the authority of the foreign government having knowledge of the facts, or, in the absence

of such person, by the official representative of the foreign government based upon depositions in his possession."

Neither in Grin v. Shine nor in the case of In re Grin (C. C.) 112 Fed. 790, was the complaint of the Russian consul set forth in hæc verba. Hence it becomes difficult, if not impossible, to ascribe its exact meaning to the language employed by Mr. Justice Brown in the excerpt immediately preceding. See, also, Beavers v. Henkel, 194 U. S. 87, 24 Sup. Ct. 605, 48 L. Ed. 882.

A perusal of the foregoing extracts from the opinions of the Supreme Court makes it evident that depositions from a foreign country, which are admissible in evidence upon the hearing before the commissioner, are also to be admitted for the purpose of vesting jurisdiction in the commissioner to issue the warrant. But it is urged by counsel that, if the complaint be not based upon the personal knowledge of the affiant, the sources of his information should be stated and a copy of the indictment or equivalent proceeding, or a copy of the depositions of witnesses having knowledge of the facts should be annexed to the complaint. This contention of counsel is based upon the language of Mr. Justice Brown in the cases to which reference has been made. It is to be observed, however, that when this is done —that is, when the papers are annexed, etc.—it will, employing the words of the learned justice, "afford ample authority to the commissioner for issuing the warrant." The principal purpose, perhaps not the only one, of annexing the papers to the complaint, is to satisfy the commissioner that the prosecution against the accused is based upon real grounds, and not upon mere suspicion of his guilt. Was not this purpose fully subserved in the present case? We have seen that, when Mr. Lomeli made the complaint, he had before him the record and depositions from Mexico pointing to Yordi's guilt. We have also seen that, when the complaint was submitted to the commissioner, he was thoroughly conversant with the contents of the record and depositions from Mexico, since they were before him in a former hearing had upon the first complaint made by Mr. Lomeli. Besides, he knew that the papers were in the consul's possession. What more was necessary? Did not the knowledge thus acquired "afford ample authority to the commissioner for issuing the warrant"? Was it indispensable to the jurisdiction of the commissioner that the record and depositions from Mexico should be actually fastened to the complaint when they were in the custody and keeping of the consul, and the commissioner was already in possession of the information which they contained?

To answer the last question in the affirmative would be to construe with undue literalness the language of Mr. Justice Brown; and it seems to the court that, in view of the circumstances of this case, the reply must be in the negative. It follows that the order of the commissioner, detaining the petitioner to await a final order of extradition, should be affirmed.

An order will be accordingly entered discharging the writ heretofore awarded, and requiring the marshal to hold the petitioner in custody until by the proper authorities a warrant of extradition be duly issued.