[Crim. No. 8677. Second Dist., Div. Three. Dec. 10, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. CLINTON B. ROSS, Defendant and Appellant.

Ellery E. Cuff and Erling J. Hovden, Public Defenders, James P. Nunnelley and James L. McCormick, Deputy Public Defenders, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

FILES, J.—Defendant was found guilty after a court trial of possessing marijuana in violation of Health and Safety Code, section 11530. The question raised by this appeal is whether the narcotic found on defendant's person just prior to his arrest was the product of an unlawful search.

The only evidence of the circumstances surrounding de-

fendant's search and arrest was the testimony of one of the arresting officers. Officer Portney testified that on April 5, 1962, about 6:17 p.m., he and his officer companion learned over their patrol car radio that there had been a robbery and shooting at a paint store on Florence and Hooper in Los Angeles. The broadcast described the suspects as two male Negroes, 5 feet 9 inches to 6 feet, approximately 25 years old, one wearing a red sweater and the other a black and white sweater with dark pants. About 6:20 p.m., while driving on Hooper Avenue about three-quarters of a mile from the scene of the robbery, Officer Portney observed a car parked on the east side of Hooper. Two men were seated in the car. The man behind the driver's wheel wore a black and white sweater; another, seated in the back of the car, was clad in a red sweater. A third man, the defendant, was observed getting into the car. It does not appear in the record, but we assume in favor of the judgment that the men wearing sweaters were Negroes. The men were ordered to get out of the car, which they did willingly. They were then searched for weapons. None was found. The officer testified that the man in the black and white sweater was 5 feet 9 inches tall and 24 years old.

The other events preceding the search were described by the officer in the following testimony: "Q. Were you speaking to the driver or the man seated behind the steering wheel? A. Yes, who stated that he had been out driving around since five o'clock with the suspect in the back seat and that they saw the defendant on the corner and decided to give him a ride. The person in the back seat stated that they were supposed to meet him there at the location. Q. All right. Then did you go ahead and continue to search the three men? A. Well, then, because of conflicting stories, we gave them a further search. We searched the car and we searched them, looking for evidence of the robbery, and we found in the right front jacket pocket of the defendant two brown paper cigarettes which resembled marijuana." Upon questioning, defendant admitted that these cigarettes contained marijuana and that he had purchased them from an unknown person at 68th Street and Central about a half hour earlier. The three men were then placed under arrest "for suspicion of robbery, and . . . for narcotics."

Defendant does not challenge the propriety of the conduct of the police up to the time of the search of his pockets which produced the marijuana. He contends that this second search

was unlawful because it was made without a search warrant or his consent or probable cause to arrest him.

After the officers had satisfied themselves that the men they were interrogating carried no dangerous weapons, there was no legal ground for a further search unless it was done as an incident to a lawful arrest. At this time the officers had no reason to suspect the presence of narcotics. They were investigating the robbery of a paint store. They had information concerning two men only. Defendant was involved only because he was entering the vehicle with the other suspects when the officers arrived. The officer characterized the statements made by the two sweatered men as "conflicting stories," but from his cryptic statement of the conversation it is far from clear that the suspects were attempting to deceive the officers. Moreover, if it be assumed that the two men in sweaters were giving conflicting stories and that they were attempting to mislead the officers as to their purpose in being at that location, this fact, without more, could hardly incriminate defendant. There is no evidence that defendant was aware of what the other men had said. It does not appear that the officers asked or permitted defendant to give any identification or explanation before they proceeded to deal with him as a prisoner under arrest. Assuming that the circumstances justified detaining defendant temporarily to question him and to discover his identity, it does not follow that the officers were entitled to arrest him and go through his pockets. (*People* v. *Mickelson*, 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]; *People* v. *Gibson*, 220 Cal.App. 2d 15 [33 Cal.Rptr. 775]. Contrast the facts of this case with the investigation and subsequent lawful arrest in *People* v. *Parham*, 60 Cal.2d 378, 382-383 [33 Cal.Rptr. 497, 384 P.2d 1001].)

Assuming that there was reasonable cause to arrest and search the two men in sweaters, this alone would not justify arresting or searching a third party who was found in the company of the others. (*People* v. *Simon*, 45 Cal.2d 645 [290 P.2d 531]; *People* v. *Yet Ning Yee*, 145 Cal.App.2d 513 [302 P.2d 616]; cf. *United States* v. *Di Re*, 332 U.S. 581 [68 S.Ct. 222, 92 L.Ed. 210]; *People* v. *Kitchens*, 46 Cal.2d 260, 263 [294 P.2d 17].)

The record here compels the conclusion that the search of defendant's pockets was purely exploratory and not based upon probable cause to arrest. The product of that search is therefore inadmissible in evidence, and the convic-

tion based upon that evidence cannot stand. The closing words of the *Mickelson* opinion are pertinent here (59 Cal.2d at p.454): "Instead of interrogating Zauzig and defendant with respect to the robbery or requesting them to accompany the officers the few blocks to the market for possible identification, the officer elected to rummage through closed baggage found in the car in the hope of turning up evidence that might connect Zauzig with the robbery. That search exceeded the bounds of reasonable investigation. It was not justified by probable cause to make an arrest, and it cannot be justified by what it turned up."

The order denying the motion for a new trial is not appealable (Pen. Code, § 1237) and the purported appeal therefrom is dismissed. The judgment is reversed.

Shinn, P. J., and Ford, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied February 5, 1964.